**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIELLE FLETCHER,                                    Case No. 1:19-cv-1038

        Plaintiff,                                    Black, J.
                                                       Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Danielle Fletcher filed this Social Security appeal in order to challenge the Commissioner's decision that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding pro se, Plaintiff presents multiple claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## I.    Summary of Administrative Record

Plaintiff filed an application for supplemental security income ("SSI") on September 17, 2015, alleging that she became disabled due to a lumbar spine impairment.[1] Plaintiff was 31 years old on the date she filed her application, and remained in the "younger individual" age category throughout the administrative proceedings. (Tr. 22). She alleges her disability arose on November 9, 2014, when she was assaulted by a co-worker. (Tr. 450-451). Years earlier in 1998 when she was 13 years old, Plaintiff was involved in an ATV accident that caused a fracture to her lumbar spine. (Tr. 18).

---

[1]The administrative record reflects that Plaintiff previously filed applications for Disability Insurance Benefits ("DIB") in 2006 and 2007, which were denied. (Tr. 266). Only the 2015 SSI application is at issue in this appeal.

Plaintiff lives with her husband, two daughters and her grandmother. (Tr. 17). She has a high school education and previously worked as a cleaner, a fuel clerk/cashier, a cashier/stocker, and a mental health technician. (Tr. 11).

After Plaintiff's application was denied on initial review, she retained counsel, Attorney Dru Shope, who requested reconsideration. (Tr. 294-296). Following the denial of her claim on reconsideration, Plaintiff sought an evidentiary hearing before an administrative law judge ("ALJ"). Counsel withdrew in December 2017. (Tr. 329). On June 12, 2018, ALJ Anne Shaughnessy held a hearing at which Plaintiff appeared pro se and gave testimony, along with her husband and a vocational expert.

Plaintiff testified that she moved to Florida in 2017 but that her attorney initially agreed to remain as counsel. (Tr 235). However, Plaintiff admitted that she received a letter from Mr. Shope notifying her of his withdrawal from representation in December 2017. (*Id.*) In January 2018, Plaintiff moved back to Ohio. (*Id.*) She testified that in March 2018 she contacted Attorney Shope and he again agreed to represent her. (Tr. 236). However, the administrative record reflects no new appearance. Plaintiff testified that when she called Mr. Shope the day before the hearing, he "got rude with me on the phone and said that I wasn't his client, that incompetent people just assume that he is." (Tr. 235). She subsequently went to his office to obtain her records, and he "gave me a very small portion" of them. (Tr. 235). She asserts that in addition to failing to provide Plaintiff with her complete "file or original medical records [that] I obtained," former counsel contacted police to have Plaintiff "removed from his office." (Doc. 13 at 20).

Because she was appearing pro se, the ALJ notified Plaintiff of her right to representation both orally and in writing, and offered her the opportunity to continue the hearing once she had obtained new counsel. (Tr. 236). After Plaintiff expressed her

desire to proceed without counsel, (Tr 236), the ALJ took care to ensure that Plaintiff was aware of her right to representation.  Plaintiff reiterated her desire to proceed pro se both verbally and in writing. (*See generally*, Tr. 232-239, 354).

On July 3, 2018, the ALJ issued an adverse written decision.  The ALJ found that Plaintiff has two severe impairments:  a kyphotic deformity of the lumbar spine that is status-post corpectomy and fusion, and obesity.  (Tr. 14).  The ALJ additionally found "nonsevere" mental impairments that did not cause "more than minimal limitation" in Plaintiff's ability to perform work activities.  (*Id.*)  The ALJ determined that none of Plaintiff's impairments, alone or in combination, meets or medically equals any Listing under 20 C.F.R. Part 404, Sbpt. P, App.1.  (Tr. 16).  Despite her inability to perform her past work, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform some sedentary work with the following non-exertional limitations:

> [S]he cannot climb ladders, ropes, or scaffolds.  She can stoop, kneel, and crawl occasionally.  She can reach overhead with the right upper extremity occasionally.  She should avoid concentrated exposure to extreme cold, vibration, and hazards.

(Tr. 17).

Based upon testimony by the vocational expert, the ALJ concluded that Plaintiff could still perform a significant number of jobs in the national economy, including the representative unskilled jobs of call out operator, order clerk, and charge account clerk. (Tr. 23).  Therefore, Plaintiff was not disabled.  (Tr. 24).  On October 9, 2019, the Appeals Council denied further review, leaving the ALJ's decision as the last decision of the Commissioner.

In her judicial appeal before this Court, Plaintiff presents eleven claims of error in a 33-page handwritten Statement of Errors.[2]  In her Statement, she asserts that the ALJ erred:  (1) by failing to provide a full and fair hearing; (2) by mischaracterizing evidence in her medical records; (3) by not properly considering reports from treating and examining providers; (4) by not properly considering her subjective complaints; (5) by not considering the combination of her impairments; (6) by not properly evaluating her RFC; (7) by not properly applying the "Grids"; (8) by not allowing Plaintiff to question the vocational expert; (9) by restricting Plaintiff to sedentary work; and (10) by not obtaining additional medical records and images.  In her eleventh claim, Plaintiff asserts that new medical evidence exists that she was unable to present to the ALJ, and that would alter the result.  (Doc. 13 at 6-7).  Plaintiff's list of errors have been reorganized in the discussion below for the convenience of the Court.

## II.    Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by

---

[2]Plaintiff properly moved for leave of court to file excess pages.  Although hand-written, Plaintiff's Statement contains citations to both the Administrative Record and to case law.  Also included among the 33 pages are seven pages of medical records.  (Doc. 13 at 10-17).

substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).   In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).   If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).   As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

5

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

## B. Plaintiff's Claims

### 1. Whether Plaintiff Received a Full and Fair Hearing

Plaintiff's first, eighth and tenth claims are construed together as a claim that Plaintiff did not receive a full and fair hearing. Liberally construed, she suggests that she was unable to present all of her records due to her attorney's last-minute abandonment and his refusal to provide her with copies of relevant documents. In addition, she argues that due to her pro se status, the ALJ should have obtained additional records in order to comply with her duty to develop the record. In the same vein, she asserts that she should have been permitted to question the vocational expert.

In cases in which the Plaintiff is represented by counsel, the Sixth Circuit has made clear that "[t]he duty to develop the record ... is balanced with the fact that '[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.'" *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). However, the Sixth Circuit imposes a heightened duty to develop the record in some cases. Such a duty arose in *Lashley v. Sec'y of Health and Human Servs.,* 708 F.2d 1048, 1051-52 (6th Cir.1983), for example, where the litigant was "(1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *See, id.,* 708 F.2d at 1051-52 (6th Cir. 1983)

6

(holding that an ALJ's failure to fully develop the record denied the claimant a full and fair hearing, where the 79 year old claimant, who had suffered two strokes and had a fifth grade education, was obviously confused and possessed limited intelligence).

Not every case involving a pro se litigant will result in a "heightened duty."  In *Wilson v. Com'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008), the Sixth Circuit emphasized that absent the "special circumstances" that existed in *Lashley*, "the claimant bears the ultimate burden of proving disability."  In *Wilson*, the ALJ had adequately developed the record, because the hearing transcript disclosed the pro se claimant's "grasp of the proceedings and the adequacy of her case presentation to the ALJ." *Id.* Here, the record reflects a fact pattern much closer to *Wilson* than to *Lashley*.  In *Lashley*, the plaintiff exhibited obvious difficulties in reasoning and the ALJ conducted only a superficial examination that did not allow plaintiff to effectively present his case.  *See id.*, 709 F.2d at 1049, 1052-63.  In contrast to Mr. Lashley's modest education and limited IQ, Plaintiff has a high school education, with some college coursework, (Tr. 242), and is of average intelligence.  Her hearing before the ALJ lasted roughly twice as long as the cursory hearing in *Lashley*.

A review of the transcript reflects her clear understanding of the proceedings and relevancy of medical evidence.  Plaintiff testified that once she learned that her lawyer did not plan to appear at the hearing, she went to his office and obtained a significant portion of her records.  (Tr. 235-236).  She also went to a local hospital to obtain additional records via CD.  (Tr. 236).  In addition, three weeks prior to her hearing,[3] Plaintiff executed

---

[3]Defendant suggests that the fact that Plaintiff completed paperwork to obtain her own medical records weeks before the hearing, sending them to herself and not to Mr. Shope, appears inconsistent with her allegation that she believed that Mr. Shope represented her until the day prior to the hearing.  However, Plaintiff implies in her Statement of Errors that all records in her attorney's possession had been gathered by her rather than by counsel.  (Doc. 13 at 20, asserting that attorney refused "to give me my file or original medical records I obtained.").

paperwork at the Marshall Surgery Center in order to obtain more records.  (Tr. 33).   Her pro se filings in this Court are clear and coherent, with citation to case authority as well as to the record.

Plaintiff's suggestion that this case should be remanded because her attorney abandoned her is not persuasive.  First, the administrative record reflects that counsel withdrew in December 2017 – months prior to the evidentiary hearing.[4]  But even if Plaintiff's account is credited – that she honestly believed counsel would represent her again and learned to the contrary only a day before the hearing – the ALJ offered her the option of continuing the hearing until such time as she could obtain new counsel rather than proceed pro se.  Plaintiff unequivocally declined that option.  (*See* Tr. 236, "I believe that I do have enough [records] today to present my case, but if you need further evidence, I have some CDs that I signed for yesterday at the hospital.  They are going to be mailing them to me.").  For the convenience of any reviewing court, the undersigned has set forth the full colloquy:

> ALJ: …Okay.  I just have to say this on the record.  You have the right to be represented by an attorney or a non-attorney.  A representative can help you obtain information about your claim, explain medical terms, and help protect your rights.  A representative may not charge a fee or receive a fee unless we approve it.
>
> Some legal service organizations offer legal representation free of charge if you satisfy their criteria.  You also have the right to proceed without a representative.  And if you do so, I will obtain the relevant medical records and question you at the hearing.  So, do you understand your rights to representation?
>
> CLMT:  yes, ma'am.
>
> ALJ:  So, do you want – do you wish to proceed with or without a representative?

---

[4]Plaintiff's Statement of Errors states that she and her husband did not move to Florida until August 2017, and returned to Ohio four months later in January 2018.  (Doc. 13 at 19).

CLMT:  Without.

ALJ:  Okay.  You state you want to proceed without a representative. Therefore, let the record reflect that the claimant has waived the right to representation.  I mean – well, I just have to back up.  I mean, have you considered getting a different –

CLMT:  I have, but at this point, I have a lot of my records.  And I don't see what another lawyer would do other than explain more things.  I feel that you all would be fair.  I've read this over multiple times.  And it says if you're willing to accept my documentation and question me, I feel that I can answer those questions.  And I feel that my medical evidence would be sufficient enough.

ALJ:  Okay.  So, as you are unrepresented, I will ensure that your due process rights are protected and will obtain any evidence that may be needed.

(Tr. 236-237).  Plaintiff repeatedly confirmed her intent to proceed pro se and expressed her intention to present the testimony of a lay witness, her husband, on her behalf.   In 20/20 hindsight Plaintiff may regret her decision to proceed without counsel, but the record is clear that Plaintiff made that decision knowingly and voluntarily at the time.  (Tr. 237; *see also* Tr. 354, written waiver form).

At the hearing, the ALJ alerted Plaintiff to the fact that the agency had "records only up to 2016, you know, which is almost two years ago now."  (Tr. 238).  Plaintiff responded by explaining that she "honestly did not have a doctor during most of 2017 because that's when we were in transition to Florida."  (Tr. 238).  Plaintiff stated that "when I moved back here in January [2018], I reestablished doctors and I have medical paperwork for you."  (Tr. 238).  Plaintiff's testimony conveyed that she had sought out and obtained updated medical records dating from 2018, prior to the hearing, which evidences her understanding of the process and ability to present her case.  Plaintiff advised the ALJ that she had "some paperwork here from Dr. Hoyt…[including] a physical capacity assessment and the other one is a listing of 104A worksheet."  (*Id.*)  The ALJ asked

Plaintiff for names and addresses of other physicians so that she could request any additional documentation. Plaintiff responded that she had already completed paperwork and had provided that information. (Tr. 238-239). The list of medical sources corresponds with the list provided by Plaintiff. (*See* Tr. 239, 244, testifying that her physicians include Dr. Hoyt, Dr. Levine, and Dr. Elizabeth George; *see also* Tr. 442).

The ALJ clearly satisfied her duty to provide Plaintiff with a full and fair hearing. The transcript reflects detailed and extensive questioning by the ALJ of Plaintiff, her lay witness, and the vocational expert. Plaintiff does not identify any additional testimony she could have offered. Although Plaintiff complains that she was not offered an opportunity to question the VE herself, she does not identify any questions that she would have liked to ask the VE.

In addition to extensive questioning at the hearing, the ALJ obtained relevant post-hearing records prior to issuing her decision, including six additional sets of medical records consisting of more than 100 pages including: (1) a 2016 physical capacity assessment from Dr. Hoyt; (2) May 2018 rheumatology consult notes; (3) April 2018 podiatry notes; (4) March 2018 initial treatment notes establishing care with primary care physician Leigh Levine, D.O., as well as a follow-up appointment in May 2018; (5) progress notes dated from August 2015 through May 2018 from Marshall Health; and (6) progress notes dated April 2016 through September 2016 from psychologist Cynthia Clay. (Tr. 855-958).

Plaintiff complains that the ALJ missed some records. Undermining Plaintiff's argument, the record reflects that the ALJ notified Plaintiff of precisely which post-hearing records she had secured. The notices explained that Plaintiff could comment on the additional evidence, submit any additional statements concerning the facts and law, or

submit any additional records that she wished for the ALJ to consider. (Tr. 446, 448). The same July 2018 notices informed Plaintiff that she could request "a supplemental hearing" at which she could appear and submit additional evidence and a written or oral statement. (*Id.*)  Three and a half months elapsed between the hearing and the date of the ALJ's decision, during which time Plaintiff could have, but did not, supplement the record herself.  Rather than submitting additional records to the ALJ, Plaintiff waited to submit additional records to the Appeals Council.  As discussed below, the vast majority of records submitted to the Appeals Council had already been made part of the record by the ALJ and were considered prior to the ALJ's decision. One exception was gynecological records which were not relevant to any asserted limitation.  In sum, having reviewed the administrative record as a whole, the undersigned concludes that the ALJ satisfied her duty to develop the record and provided Plaintiff with a full and fair hearing.

### 2.  Whether Plaintiff Meets or Equals a Listed Impairment

Plaintiff's second, third, fifth, and seventh assertions of error all relate to her argument that the ALJ erred in failing to find that she meets or equals a Musculoskeletal Listing that would entitle her to a presumption of disability at Step 3 of the sequential analysis.  Specifically, Plaintiff cites to Listings 1.02, 1.03 and 1.04.[5]  Although Plaintiff cites to various medical records, she fails to explain how those records demonstrate that her condition meets or equals any of the referenced Listings.  Arguably, Plaintiff's failure to explain and develop her argument amounts to a waiver.  Pro se litigants are subject to the same waiver rule as represented parties.  *See Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007).

---

[5]Plaintiff also cites to Section 1.01, but that section is merely a section heading, not a separate Listing.

Construing her Statement of Errors liberally, it appears that Plaintiff may be suggesting that Listing 1.02 is met by her "bone spurs," "axial joint – weight bearing," and "chronic pain and joint stiffness." (Doc. 13 at 24).  She appears to believe that Listing 1.03 is met by virtue of her August 2015 spine surgery, and that Listing 1.04 is met by a variety of symptoms.  (*Id.*)  To the extent that Plaintiff's argument is not waived, the undersigned has reviewed all of the cited medical records.  The records do not facially demonstrate that Plaintiff meets all of the Listing criteria.  It is incumbent upon a plaintiff to prove that she satisfies each and every element of a Listing.  *Elam ex rel Golay v. Com'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The record substantially supports the ALJ's conclusion that Plaintiff's condition does not satisfy <u>all</u> of the elements of <u>any</u> of Musculoskeletal Listings.  For example, the record supports the ALJ's conclusion that Plaintiff's impairments "do not produce the inability to perform fine and gross movements to an extent great enough to meet the criteria of Listing 1.02B, nor do they produce the inability to ambulate effectively to an extent great enough to meet the criteria of Listing 1.02A."  (Tr. 17).  Both Listings 1.02 and 1.03 require an "inability to ambulate effectively, as defined in 1.00B2b."  20 C.F.R. Part 404, Sbpt. P, App. 1, Listing 1.02(A). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning…to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Part 404, Sbpt. P, App. 1, Listing 1.00B2b(1).  The ALJ noted the records on which Plaintiff had presented with an antalgic gait on a few occasions in 2015 and 2016, but also pointed out that the record does not show that she uses an assistive

device that limits her ability to use both arms such as a walker, crutches, or two canes. (Tr. 18-19).  Indeed, many examinations found a normal gait.  (*Id.*)  By March 2018, Dr. Levine found Plaintiff to have a normal gait and stance, and that her "overall musculoskeletal findings were normal."  (Tr. 19, citing Tr. 877).  In March and in May 2018, Dr. Hoyt also noted normal gait and stability.  (Tr. 19, 79, 84, 883, 895).  Thus, the ALJ's conclusion that Plaintiff does not meet or equal Listing 1.02 or 1.03 is substantially supported.

The same conclusion is obtained with respect to Listing 1.04.  In considering that Listing, the ALJ noted that Plaintiff's musculoskeletal issues

> do not produce the sensory loss or reflex loss needed to meet the criteria of Listing 104A.  There is no evidence of spinal arachnoiditis, which is needed in order to meet the criteria of Listing 1.04B.  There is also no pseudoclaudication, which is required in order to meet the criteria of Listing 1.04C.

(Tr. 17).  Consistent with the ALJ's analysis, Dr. Hoyt affirmatively stated that imaging showed no evidence of nerve root compression, as required by Listing 1.04.  (Tr. 858). Dr. Hoyt further opined that there was no neuro-anatomic distribution of pain, no motor loss accompanied by sensory or reflex loss, and no positive straight leg raise test, as required by Listing 1.04(a). (*Id.*)  The ALJ also discussed imaging studies that showed a lack of spinal stenosis or impingement.  (Tr. 18).

In addition, "[n]o medical source has stated that the severity of the claimant's impairments medically equals the criteria of a listed impairment."  (Tr. 17).  Instead, the reviewing agency physicians concluded that Plaintiff's impairments did not meet or medically equal any Listing.  (Tr. 264-290).  Their opinions, along with the medical records cited by the ALJ, provide substantial support that Plaintiff's impairments did not meet or equal any Listing.  *See* 20 C.F.R. § 416.926; *Dorton v. Heckler*, 789 F.2d 363, 367 (6th

13

Cir. 1986) (declining to reverse ALJ's findings where plaintiff failed to present adequate medical evidence of equivalency).

### 3. The ALJ's Assessment of Plaintiff's Subjective Reports

Plaintiff's third and fourth claims of error relate to her complaint that the ALJ failed to accept her subjective complaints.[6]  She asserts that she is disabled due to pain. (Tr. 243-244, testifying that she spends most of her time in a medical chair to reduce her pain). However, the ALJ determined that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 18).  The ALJ found that:

> [T]he claimant's allegations are not fully consistent with the evidence, and that she is capable of doing more than she alleges.  Furthermore, the claimant's symptoms and restrictions are not supported by the relevant medical signs, laboratory findings, or nonmedical evidence to the level of disability alleged.  In fact as detailed above, the medical record indicates that the claimant's physical condition improved.

(Tr. 22).

Judicial deference is particularly important in evaluating subjective complaints. The assessment of such symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).  SSR 16-3p emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at *11.  Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to

---

[6]The third claim was also considered in relation to Plaintiff's Listing argument.

evaluate the limiting effects of a plaintiff's symptoms. *Id.*, 2017 WL 5180304, at *7-8 (listing factors); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. However, SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Thus, it remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers*, 486 F.3d at 247. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). A credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The undersigned finds no compelling reason to disturb the ALJ's assessment of Plaintiff's subjective complaints in this case. Plaintiff testified that she drives a "few times a week" to the grocery store or to take her daughters to their ball games. (Tr. 241; *see also* Tr. 392, reporting that she shops once or twice per week and that it takes an hour). She testified that she "can't stay at their games very often" due to pain. (Tr. 241; *see also* Tr. 248 "I usually come [back] towards the end to try to watch the end of it. I usually don't do more than 30 minutes of games or practices."). Plaintiff testified that her medication helps, and that she only "[s]ometimes" has headaches as a side effect. (Tr. 18, 245). She takes a probiotic to help with intestinal side effects. (*Id.*)

She testified that physical issues with her back and right arm are the "main problem" that prevent her from working. (Tr. 246). She testified that she had been referred to a pain clinic, had submitted paperwork, and was "waiting" for Dr. Hoyt's office "to send me an appointment." (Tr. 246). She completed physical therapy after her 2015 surgery, and testified that she uses a cane in public because she loses her balance. (*Id.*) She endorsed pain in her left leg and lower back but also testified that part of her issue is "not necessarily pain, but …feels gross just the way it pops when I walk." (Tr. 247). She testified that sitting and trying to bend make the pain worse, and that laying down and using her chair in a reclining position helps reduce pain. (*Id.*) She testified that she requires assistance from family members for toileting, bathing and dressing due to her inability to bend and pain. She testified that after standing 20 minutes she'll need to start rocking to help alleviate the pain, and that she does not lift anything more than "five or ten pounds." (Tr. 247-248). She testified that she can prepare simple foods like "a bowl of cereal, things like that" but does not do any "prolonged baking." (Tr. 249; *see also* Tr. 391, reporting she prepares packaged foods and frozen meals). She drives to the grocery store with her girls in a van that her husband has modified with "a special pillow into my seat," grab bars, and a rearranged headrest for comfort. (Tr. 249). At the grocery store, she sometimes walks and other times is pushed in a wheelchair. (Tr. 249-250; *see also* Tr. 392, reporting wheelchair use). She can handle money and pay bills. (Tr. 392). She oversees her daughters' homework and watches TV but does little else. (Tr. 393).

The agency reviewing physicians found Plaintiff to have "limited physical credibility" based upon significant inconsistencies in the record such as her report of a loss of bowel control, which was not supported in any record. (Tr. 285; *see also* Tr. 893 (denying bladder or bowel issues)). Likewise, although she reported the need for a

wheelchair "due to falls in public" as well as a need for a cane, none of her medical records were consistent with that report. Instead, her "BLE [Bilateral Lower Extremity] EMG was normal," as was her lower extremity strength. (Tr. 285).

In her independent assessment, the ALJ also found significant inconsistencies between Plaintiff's testimony and the medical records.[7] In contrast to Plaintiff's argument that she cannot work in part because of her anxiety and depression, (Doc. 13 at 30), nearly all of her records, including a consultative examination by Dr. Sexton, reflected no more than mild symptoms. Dr. Sexton noted hobbies including reading, watching TV and scrapbooking. (Tr. 695). Plaintiff also did not testify to any limiting effects of any mental impairments at the hearing before the ALJ. After reviewing the record as a whole, the ALJ found Plaintiff's mental impairment to be non-severe. (Tr. 16).

The ALJ noted Plaintiff's "variable" work history prior to her alleged onset of disability. (Tr. 18). In addition, she considered Plaintiff's daily activities including her ability to drive a few times a week, go to the grocery store, and transport her daughters. (Tr. 17). *See Warner*, 375 F.3d at 392 (affirming consideration of daily life activities).

Multiple records support the ALJ's conclusion that "the medical record indicates that the claimant's physical condition improved" over time. (Tr. 22). Despite Plaintiff's testimony that she sits in a medical chair virtually all day, post-surgical records showed motor strength was normal in all extremities, except for a 4/5 left hip flexion found in October 2015 and the same finding in April 2016. (Tr. 18, 19). *See Crouch v. Sec'y of HHS*, 909 F.2d 852, 856-57 (6th Cir. 1990) (holding that "the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion"). By February

---

[7]Plaintiff argues that "hesitation and nervousness were factors in stating minimal descriptive answers," (Doc. 13 at 32), but the ALJ did not cite to Plaintiff's demeanor in her assessment of the inconsistencies in the record.

2016, Plaintiff was reporting to her physician that she was doing well and that her activity had improved as had the numbness that bothered her prior to her surgery. (Tr. 19). Although she reported pain that was aggravated by sitting, she also reported improvement in walking. (*Id.*) By March 2018, she was complaining of pain upon physical activity, but demonstrated a normal gait and stability. (*Id.*) In May 2018, she continued to have a normal gait and stance, and an examination by Dr. Levine yielded musculoskeletal findings that overall were normal. (*Id.*).

### 4. Whether the RFC is Substantially Supported

Plaintiff's sixth and ninth claims of error attack the ALJ's RFC determination that she remains capable of some sedentary work. She asserts that "sitting causes me the greatest of pain," and that she must readjust her position "constantly." (Doc. 13 at 30). She further maintains that she can only sit in a reclining position with her legs elevated above the waistline. She testified that she spends most of the day at home in a zero gravity chair/medical chair that she found at a flea market. She complains of depression. (*Id.* at 31). She contends that the RFC was incorrect.

I find no error. The determination of a plaintiff's residual functional capacity is reserved to the Commissioner. See 20 C.F.R. § 416.927(d). Although Plaintiff clearly disagrees with the ALJ's conclusion, the RFC findings on the record presented appear to be well within the zone of reasonable choice and are supported by substantial evidence. *See McClanahan v. Com'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance." *Rogers v. Com'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

Plaintiff's claim that the ALJ did not fully accept her subjective complaints about her limitations has been addressed above, as has the claim that the ALJ failed to sufficiently develop the record. In determining Plaintiff's RFC, the ALJ explained that she was giving "partial weight" to the opinions of two state agency physicians. (Tr. 19). The RFC determined by the ALJ was more restrictive than their opinions, insofar as the consultants opined that Plaintiff could perform work at the light exertional level rather than the sedentary level. (Tr. 19, citing Tr. 272-274). The ALJ also rejected the opinion of consulting physician Dr. Gallagher that Plaintiff could occasionally climb ladders, ropes or scaffolds, and instead agreed with Dr. Sutherland that Plaintiff could never climb ladders ropes or scaffolds. (*See* Tr. 272; 286-87). The ALJ further adopted the environmental limitations contained in Dr. Sutherland's opinion. (*See* Tr. 287-288). The ALJ's reduction of the exertional level reflects that she considered not only the two consulting opinions but also the more recent medical records submitted after their review.

The ALJ gave only "some weight" to the RFC opinions of Plaintiff's treating physician, Dr. Hoyt. Dr. Hoyt limited Plaintiff to lifting 8 pounds rather than the 10-pound limit determined by the ALJ. He also opined that she could lift 5 pounds frequently, Dr. Hoyt limited Plaintiff to standing/walking for no more than 2 hours in a day, and for no longer than 15-20 minutes at a time. He limited Plaintiff to sitting for no more than 4 hours in a workday, no more than 25-35 minutes at one time. The ALJ accepted Dr. Hoyt's right arm limitation as well as his opinions that she have no concentrated exposure to extreme cold, vibration, and hazards. The ALJ also accepted Dr. Hoyt's 2-hour restriction on standing/walking, but determined that Plaintiff could sit for up to 6 hours rather than the 4-hour limitation espoused by Dr. Hoyt.

A longstanding regulation applicable to this case provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). Here, the ALJ adequately explained why he found Dr. Hoyt's opinions not to be entitled to controlling weight, reasoning in part: "[H]is assessment is not entirely consistent with the objective medical evidence, including Dr. Hoyt's own examination findings…." (Tr. 20). The ALJ cited multiple records from February 2016, April 2016, and March 2018 to support his conclusion that "[t]he evidence on examination, including Dr. Hoyt's own examination findings, do not fully support all of his limitations, although they do support limiting the claimant to a less than full range of sedentary exertion." (Tr. 21). The ALJ provided the requisite "good reasons" for giving only some weight to Dr. Hoyt's RFC opinions, and the ALJ's analysis is substantially supported.

The undersigned also finds the ALJ's rejection of the opinions of Cynthia Clay, M.A., a master's level psychologist, to be substantially supported. The ALJ explained that she had treated plaintiff for a relatively brief five-month period, and that her opinions were contrary to substantial medical evidence elsewhere in the record that showed minimal mental findings and no severe mental impairments. (*Id.*)

### 5. Whether Remand is Appropriate Under Sentence Six

Plaintiff's eleventh claim seeks remand based upon "new" evidence. Plaintiff submitted 202 pages of evidence to the Appeals Council in support of her claim, and seeks to submit 7 pages of records to this Court. None of that evidence may be

considered by this Court in determining whether the ALJ's decision was substantially supported under Sentence Four. *Cline v. Com'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Instead, evidence before the Appeals Council may be considered by this Court to determine whether remand is appropriate under Sentence Six, but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

Sixth Circuit case law offers the following guidance:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam). As noted above, the burden of showing that a remand is appropriate is on the claimant.

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir.1986)).

In its consideration of the 202 pages of records that Plaintiff submitted to that body, the Appeals Council found that one exhibit was "not new" because it was already in the record and considered by the ALJ. (*See* Tr. 2, referring to record from Cynthia Clay, M.A. The Appeals Council declined to consider the remaining 200 pages after determining that Plaintiff had failed to "show a reasonable probability that it would change the outcome of the decision." (*Id.*)

The undersigned also finds no evidence that demonstrates a reasonable probability of a different outcome. As the Commissioner points out, all but 8 pages of the evidence that Plaintiff submitted to the Appeals Council constituted records that had been

created prior to the date of the ALJ's decision.  (Tr. 30-223).  In that sense, the evidence was not "new." See *Foster,* 279 F.3d at 357 (6th Cir.2001).  Plaintiff also cannot show the evidence was unavailable or material, because the vast majority of the records actually appeared in the record before the ALJ. (*See, e.g.*, Tr. 33-55, 189-223 (Marshall Health records) found at Tr. 800-830 and 890-935; *see also* Tr. 109-165 (Cabell Huntington Hospital records, found at Tr. 502-580; Tr. 76-86 (March and May 2018 treatment notes from Dr. Levine) found at Tr. 872-889).

Admittedly, a set of x-ray records dated 11/27/18 is "new" because it did not exist prior to the ALJ's decision. Plaintiff complains that because Dr. Hoyt "withheld" information from her, she did not learn until she received those x-rays that the hardware implanted during her August 2015 surgery had moved.  "Previous medical documentation charts hardware as stable, no movement or evidence of hardware complications visualized." (Doc. 13 at 2).  However, the undersigned finds no basis for a Sentence Six remand, because there is no reasonable probability that the Commissioner would have reached a different conclusion.  The ALJ's decision was based in large part on clinical examination records that showed a normal gait and other normal findings.  The records that Plaintiff submitted to the Appeals Council only underscore those same findings.  (*See* Tr. 55, 129, 190, 192, 201, 207-208, 215, 217, 655, 903).  Although Plaintiff suggests that the November 2018 x-rays provide a new basis for crediting her subjective pain complaints, the x-ray images do not refute the physical examination findings and other substantial evidence on which the ALJ relied.  (*Accord* Tr. 226, November 2018 examination showing normal gait and stability, and imaging that showed "no acute abnormality with the hardware.").

**III.  Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DANIELLE FLETCHER,                                    Case No. 1:19-cv-1038

        Plaintiff                                    Black, J.
                                                      Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).